(83 App. Div. 312.)

### HALL v. PIERCE.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

**1. SALE ON APPROVAL—CHANGE OF TERMS.**

Defendant received from plaintiff a circular letter offering to send a cannon for defendant's yacht on approval. The letter stated that the guns were in stock, and plaintiff could do this, though later it would be impossible. Some six weeks later the captain of the yacht interviewed plaintiff, and examined some guns at another company's, similar to the one he intended to buy. At the captain's request, plaintiff addressed him a letter describing the gun, which was submitted to the defendant, who ordered two as described in the letter. Defendant refused to accept the guns when received. After the cannons were rejected, plaintiff visited defendant to induce him to permit changes so as to warrant acceptance. *Held*, that the right to reject on disapproval was not waived either by defendant or his captain, the latter not having authority therefor.

Appeal from Trial Term, New York County.

Action by Francis G. Hall, Jr., doing business as the Naval Electric Company, against Henry C. Pierce. From a judgment for plaintiff entered on a verdict, and from an order denying a motion for a new trial, defendant appeals. Reversed.

The action is to recover $644.50, the price of yacht guns alleged to have been sold to the defendant. The answer admitted the purchase, but averred that it was upon the condition that the goods should give perfect satisfaction.

or be returned, and that upon immediate inspection when received they were found to be unsatisfactory, and worthless, and were returned. The defendant is the owner of a large pleasure yacht Yacona, and in May, 1902, received from the plaintiff a circular letter, dated the 20th of that month, wherein, after referring to the defendant's intention to purchase a new gun, it was said: "We will ship you one of our guns of such size as you may select, with our standard deck mount or of any special mount you may prefer, and if the gun does not give perfect satisfaction you may return it. We do this because we believe the gun will not be returned, but we desire to mount the gun, and feel sure you will not care to displace it. Our experience proves this. If you will provide us with the shipping address of your yacht, we will ship one complete on approval as above. Now is the time we have the guns in stock and can do this. Later in the season it would be impossible, so we solicit your early reply." In July, 1902, on or about the 1st of the month, Frank Harding, the captain of defendant's yacht, personally interviewed the plaintiff relative to the purchase of cannon, and saw some guns, but they were not what he was looking for as to size, and they went together to the Marine Supply Company, where a gun was shown him similar to the one he intended to buy. Thereupon, at the captain's request, the plaintiff addressed him a letter dated July 5, 1902, stating: "We inclose herewith particulars of B. & H. Hotchkiss Type Yacht Cannon No. 2. Length of gun proper 50″ with shoulder piece 55″, bore 1¾″, length of shell 5″, charge ¼ lb., height of deck mount 36″, dia. of base 21½, bolts 7, threaded whole length, rubber deckstand gasket, etc. We could have the guns and ammunition aboard your boat within two days from receipt of order. Hoping to be favored with your valued order, we remain. * * *" Inclosed was a circular price list. In reply the plaintiff received the following telegram, dated July 7, 1902: "Ship immediately by express care Yacht Yacona National Dock East Boston two B. & H. Hotchkiss type yacht cannon number two described in your letter July fifth to Captain Harding wire Captain Harding of shipment. H. C. Pierce." The following day the plaintiff wrote to Mr. Pierce that, "As per your order by telegraph of to-day we are sending you by express from our factory * * * Yacht Cannon. * * * Thanking you for your order," etc. On July 14th the plaintiff telegraphed Capt. Harding, "We have shipped guns as per your instructions this afternoon." The following day a bill was sent to Mr. Pierce for $644.50; the agreed price of the guns and ammunition sent. On July 17th Capt. Harding wrote the plaintiff: "The cases containing the guns received to-day. The stands are about the poorest castings I ever saw. They might answer for a canal boat but not for a yacht; and I am very much surprised you should send us such imperfect work. The barrel seems to be of different material than the breech; the arm rest is of mahogany and should be of gun metal and does not fit in place. I refuse to accept such imperfect work and wish to know if you can replace these with perfect guns at once; if not I shall be obliged to express these to you. This is very annoying and I cannot understand your reason for doing this kind of work." July 21st the plaintiff replied to the captain: "We regret to learn that the castings are not satisfactory to you. We shall send you two new deck stands complete now in process of construction at our factory to replace your present ones just as soon as they are finished. We do not supply the gun metal shoulder piece with these saluting guns but are having two made for you to take the place of the present mahogany ones." In a postscript was added: "You can mount the guns temporarily with present deck stands and paint them to suit," etc. To this letter Capt. Harding on July 22d responded, saying that the letter was placed before Mr. Pierce, who had instructed him "to express the guns to you, and they will be sent to Arlington to-night. Mr. Pierce will not have them on account of their inferior quality and owing to the unsatisfactory conditions. You need not send any more. * * * You need not have anything made for account of Yacona. The barrels of these guns are of different metal than the breech and are brazed in. I shall express the guns to-night and consider the subject closed." On July 23d the plaintiff wrote to Mr. Pierce, saying: "Your letter of the 22nd inst. stating that you are going to ship two cannon and equipment back to us by express received. We shall hold these guns

when received subject to your order." The guns were shipped, but the plaintiff declined to receive them from the express company, whereupon they were stored. Upon the subject of the condition of the guns it was testified by the plaintiff that they were of good workmanship, and in good order, and as perfect as castings could be made; that the guns were examined before leaving the factory, and .were lubricated, ahd worked all right; that they were similar and equal to the gun which had been shown to Capt. Harding the 1st of July; that, although there were some small sand holes in the brass, this was common to all such work, and was to be expected. The defendant's testimony, on the other hand, is that the guns were rough and ragged, and the castings imperfect, in that they were not smoothed down, and that they had sand holes, which marred their appearance; that they were unlike the gun which had been shown to Capt. Harding, and that the breech of one of them did not work, and could not be moved by the lever. When questioned as to this defect, the plaintiff said that the guns had been all right, and in working order when sent and packed, and that they should work all right, but that a screw might have been loose. The defendant complained that the gun body and the barrel were not of the same material, but the plaintiff replied that they never are, one being slightly darker than the other.

Motion to dismiss the complaint was denied, and exception taken. The court charged that, if the refusal to accept the guns was merely arbitrary, then the plaintiff might recover; but, that if there were defects, and the brass was rough, and there were sand holes and imperfections, "as described by the defendant's witnesses," the plaintiff might not recover. To the part of the charge referring to arbitrary rejection the defendant excepted. The jury returned a verdict for the plaintiff for the sum demanded, and from the judgment so entered the defendant appeals.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Richard Reid Rogers, for appellant.
Richard S. Newcombe, for respondent.

O'BRIEN, J. The crucial question upon this appeal is, had the defendant the right, when ·the guns were sent him, to reject them after inspection, regardless of whether they were such as should have satisfied a reasonable man? The plaintiff's theory is that the defendant had no such arbitrary right; and that, although the circular letter of May 20th, which was the means employed by the plaintiff to bring his cannon to the attention of the defendant, left it to the latter to determine, after seeing the guns, whether he would retain them, or, if not perfectly satisfied, return them, the defendant did not act upon such letter, but subsequently sent his captain, who interviewed the plaintiff, and visited with him the Marine Supply Company, and selected a pattern gun, and thereafter the rights of the parties depended upon whether or not the guns as shipped conformed with and were equal in workmanship to the pattern gun which the captain had seen. If the defendant had gone in person, or if the captain had been clothed with any authority, express or implied, so that, as agent of the defendant, he could thus bind him, and the cannon were ordered from a sample or pattern, there might be some force in this contention. It will be noticed, however, that the captain, after visiting the store of the Marine Supply Company with the plaintiff and examining a gun which he thought was of a suitable pattern, did not undertake to bind the defendant, but he instructed the plaintiff to write him a letter embodying the particulars

of the pattern gun, and this was done to the end that the matter might be submitted to the defendant for his further consideration. Acting upon the description contained in the letter thus written, the defendant sent the telegram directing the plaintiff to ship the guns, but there was nothing in this telegram nor in the correspondence between the parties that in any way waived the right which was conferred upon the defendant by the letter of May 20th to return the cannon if not satisfactory to him after inspection. It seems to us that the rights of the parties must turn upon whether by what was said, done, or written by the defendant's captain or the defendant himself the defendant gave·up or waived the arbitrary power or right of rejection conferred upon him by the May letter. Although that letter solicited an early reply, and stated that later in the season it would be impossible for the plaintiff to ship on approval, there was no attempt on the part of the plaintiff, when during the first week in July the defendant's captain visited him, to revoke or modify the conditions of the offer which had been made. To avoid the effect which must otherwise be given to this letter, the plaintiff must stand upon the ground that, regardless of his rights thereunder, the defendant either himself or through his captain undertook to purchase the guns after a pattern or from a description, and that, if the ones sent him were conformable thereto, he was obliged to keep and pay for them.

As we have endeavored to point out, the plaintiff could not, as the result of the visit of the captain, when the pattern gun was shown, from anything that the captain said or did, and which he had the right, acting on behalf of the defendant, to say or do, change the conditions as to the shipment of the guns, or destroy the right which had been vested in the defendant to return them if they did not give perfect satisfaction. After receipt of the May letter, it was entirely proper for the defendant to send his captain to examine the stock of the plaintiff, or, as was done, the stock of other firms and companies who had cannon for sale, so that the defendant might have the necessary information upon which he could act in requesting the plaintiff to send the kind of cannon which he was, under the May letter, entitled to receive for examination, and, if not satisfactory to him, return. This, therefore, was not a sale by sample, nor after a pattern, nor by description; for the plaintiff had reason to know, and as it would seem from his offer to Mr. Pierce, and his visiting him after the cannon were rejected for the purpose of inducing him to permit certain changes so that he would accept the guns, did know, that they were sent. subject to the defendant's approval. The plaintiff, as shown both by the May letter and the subsequent negotiations, took the risk of furnishing cannon which he was to place on board the yacht in a condition perfectly satisfactory to the defendant; and this he said he was, from his experience, confident that he could do. We see no escape, therefore, from the conclusion that, having failed to do so, and the defendant having, upon receipt of the guns, promptly rejected them, and expressed his dissatisfaction, and returned them, it became the plaintiff's duty to receive the guns back; and he had no right to insist that the defendant should· be satisfied with and pay for them.

Upon the subject of the actual condition of the guns there was an unquestioned conflict, the evidence of one side tending to show that the guns were unsuited, and of the poorest workmanship, and on the other side that they were of the average kind, and in good condition. It is not disputed that there were small sand holes, but the plaintiff's testimony was that these were common in that kind of work. If the rights of the parties depended upon the solution of the question of the character of the defects, and as to whether or not they were so substantial as to justify a reasonable man in rejecting the cannon as defective, then, as held by the learned trial judge, the question of fact thus presented was, upon the evidence, for the jury to determine.

We do not think, however, that this issue was controlling, because, as has been pointed out, it was made to appear that the plaintiff opened negotiations through the inducements held out in the letter of May 20th, which conferred upon the defendant the right of ordering the guns, and having them sent for his inspection and approval, and, upon his conclusion that they would not give perfect satisfaction, returning them. We can find nothing in the subsequent acts of the parties which would justify the inference that the defendant lost or waived such right of rejection, or that the plaintiff had any ground for believing that he was forwarding the guns on terms other than those expressed in his May letter. For this reason, therefore, we think that the trial court was in error in denying the motion to dismiss the complaint, and that such error requires a reversal of the judgment and order appealed from, and a new trial, with costs to the appellant to abide the event. All concur.